IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOANNIE LUCKER-McVAE                       Case No. 3:12-cv-00036-MA

               Plaintiff,                       OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

LISA R. J. PORTER
16200 SW Pacific Highway, Suite H-280
Portland, OR 97224

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97201-2902

BRETT E. ECKELBERG
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Joannie Lucker-McVae seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, and Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons that follow, I affirm the decision of the Commissioner.

## PROCEDURAL AND FACTUAL BACKGROUND

On August 20, 2008, plaintiff protectively filed applications for DIB and SSI. After the claims were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge (ALJ). An ALJ held a hearing on February 1, 2010, at which plaintiff appeared with her attorney and testified. A vocational expert also appeared and testified. On April 2, 2010, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review on November 15, 2011. The ALJ's decision therefore became the final decision of the Commissioner for purposes of review.

Plaintiff alleges disability beginning December 31, 2001, due to depression, anxiety, panic attacks, bipolar disorder, migraines, arthritis, and foot problems. Plaintiff was born on April 26, 1977, and was 24 years old on her alleged disability onset date,

and 32 years old on the date of the hearing. Plaintiff completed school through the eighth grade, and has a General Education Diploma. Plaintiff has past relevant work experience as a homecare attendant, a nurse assistant, a sales attendant, and a cashier. Plaintiff has a history of drug and alcohol abuse.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through September 30, 2008. A claimant seeking DIB benefits under Title II must establish disability on or prior to the last date insured. 42 U.S.C. § 416(I)(3); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset of disability.

See 20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*, 416.920(b), 416.971 *et seq.*

At step two, the ALJ found that plaintiff had the following severe impairments:  plantar fibromatosis, bipolar disorder, panic disorder, and substance abuse. See 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the ALJ found that plaintiff's impairments, or combination of impairments did not meet or medically equal a listed impairment.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform work at the light level with the following limitations:  plaintiff can lift 15 to 25 pounds frequently and occasionally; stand and walk two hours of an eight hour day; no restriction on sitting; understand and carry out simple to semi-complex instructions and tasks; and occasional contact with co-workers and the general public.  See 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

At step four, the ALJ found plaintiff able to perform her past relevant work as a cashier.  See 20 C.F.R. §§ 404.1565, 416.965. The ALJ made alternative step five findings, concluding that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that the claimant can perform.  See 20 C.F.R.

§§ 404.1560(c), 404.1566, 416.960(c), 416.966.    Relying on testimony from the VE, the ALJ identified the representative occupations of small products assembler and document preparer. Accordingly, the ALJ concluded that plaintiff is not disabled under the meaning of the Act.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed:  (1) the ALJ failed to properly evaluate her credibility; (2) the ALJ's RFC does not comply with Social Security Ruling (SSR) 96-8p; and (3) the VE's testimony is not supported by substantial evidence and lacks foundation.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.    42 U.S.C. § 405(g); Andrews, 53 F.3d at 1039.    "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."    Id.; Valentine, 574 F.3d at 690.    The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision.    Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).    The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation.    Batson v. Comm'r of Soc. Security

Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Andrews, 53 F.3d at 1039-40.  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001); Batson, 359 F.3d at 1193.

## DISCUSSION

### I.  Plaintiff's Credibility

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis.  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); 20 C.F.R. §§ 404.1529, 416.929.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  Id.; Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).  At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms.  Carmickle v. Comm'r Soc. Security Admin., 533 F.3d 1155, 1166 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not

arbitrarily discredit the claimant's testimony. Tommasetti, 533 F.3d at 1039; Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. Tommasetti, 533 F.3d at 1039.

Plaintiff testified at the hearing that she last worked in 2008 at Walmart as a sales associate, and that she was let go because she could not keep up with the pace, and that it was too difficult. Plaintiff testified that her husband helps her tie her shoes and put on socks, and helps her in and out of the bath. Plaintiff testified that she helps her husband make meals, and that she no longer does the laundry because it is too heavy to lift. Plaintiff testified that she occasionally vacuums, but it takes three hours to complete because she tires easily and falls down, and that she spends 80 percent of her day lying down or in a recliner. Plaintiff testified that her mother-in-law checks on her every day to ensure she takes her medication. Plaintiff described that she does not read books or magazines because her attention wanders and she gets frustrated. Plaintiff testified that her ankle and leg problems cause her to use a cane sometimes.

Plaintiff further testified that she has hallucinations once or twice a month where she hears or sees things, but realizes nothing is there, causing her confusion and frustration. Plaintiff testified that when she is frustrated, she occasionally behaves violently by yelling, screaming and hitting.

Plaintiff described that she can concentrate for up to twenty minutes and can stand for 30 minutes at a time. Plaintiff described feeling overwhelmed when pushed to stay on task. Plaintiff testified that she was put on medication for night terrors and that she suffers them three or four times a week, and that she will occasionally go two or three nights in a row without sleeping. Plaintiff also described that she suffers migraines, with nausea and vomiting, three or four times a month. Plaintiff testified that she is unable to work because of her mood swings, night terrors, anxiety, agitation and frustration. Lastly, plaintiff testified that she has not used drugs or alcohol since 2003.

The ALJ found that plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible. The ALJ partially discredited plaintiff because she made inconsistent statements about her daily activities and abilities, made inconsistent statements about her drug and alcohol use, and had large, unexplained gaps in her mental health treatment.

8 - OPINION AND ORDER

**A.    Inconsistent Statements**

The ALJ noted that at the hearing, plaintiff testified that she assists her husband with making meals by measuring things, and in an Adult Function Report, plaintiff reported that she can prepare simple meals only.   Indeed, at the hearing, plaintiff testified that she in unable to cook for herself, and she relies on her husband to do the cooking.   Tr. 47.   The ALJ found these statements inconsistent with plaintiff's October 7, 2008 report to Donna C. Wicher, Ph.D., in which plaintiff described preparing full meals for her family, such as leg of lamb, rice pilaf and vegetables.   To be sure, Dr. Wicher noted that plaintiff is able to perform activities of daily living without any significant deficits, noting that she "maintains a relatively regular routine and manages her household without any significant difficulty."   Tr. 387-88.

An ALJ may consider inconsistencies in a claimant's testimony or between the testimony and a claimant's activities when assessing credibility.   Molina, 674 F.3d at 1112.   And, an ALJ may discredit a claimant's testimony when a claimant reports participating in everyday activities which are transferrable to a work setting.   Id. Here, the ALJ could appropriately discount plaintiff's inconsistent statements about her ability to prepare meals for her family, as they contradict her allegation of total disability.   Id. at 1112-

13; <u>Turner v. Commissioner of Soc. Sec. Admin.</u>, 613 F.3d 1217, 1225 (9th Cir. 2010).

### B.    Inconsistent Reports of Drug and Alcohol Use

Inconsistencies in testimony regarding drug and alcohol use are a permissible basis upon which an ALJ may make an adverse credibility finding. <u>Thomas</u>, 278 F.3d at 959; <u>see also</u> <u>Verduzco v. Apfel</u>, 188 F.3d 1087, 1090 (9th Cir. 1999)(inconsistencies regarding alcohol use makes claimant appear less than candid).

As the ALJ detailed, on May 28, 2003, plaintiff underwent a comprehensive psychological evaluation to assess her capabilities as a parent, following the removal of her three children from her home on the basis of neglect.  Tr. 295.   In that evaluation, plaintiff reported to Robert B. Basham, Ph.D., that she began using marijuana and alcohol as a teenager, and later used methamphetamine and LSD.  Plaintiff reported to Dr. Basham that her methamphetamine use waned for a time, and later again increased.  Tr. 299.  As the ALJ indicated, plaintiff reported to Dr. Basham that she stopped using drugs and alcohol in 2002, following removal of her appendix. Tr. 299.

The ALJ found plaintiff's 2003 report to Dr. Basham inconsistent with her 2008 report to Dr. Wicher.  As the ALJ discussed, plaintiff indicated to Dr. Wicher that her only drug use occurred in 2001, when she used methamphetamine for a period of six to 12 months.  Tr. 387.

The ALJ also noted that plaintiff contradicted herself when reporting her drug and alcohol use in a January 2010 questionnaire provided by her attorney. In that document, plaintiff denied ever using alcohol, and disclosed using only methamphetamine. Tr. 443. As the ALJ indicated, plaintiff's questionnaire responses contradict not only information provided to Dr. Basham, but also contradict reports plaintiff made to other medical providers about using alcohol in 2008 and 2009. Tr. 436, 496. The ALJ also discussed that in the attorney-provided questionnaire, plaintiff denied ever losing a job because of her drug use, but made a contradictory statement to Dr. Wicher, when she reported being fired in 2002 for a "dirty UA." Tr. 386, 445. The ALJ's detailed findings are supported by substantial evidence in the record. Accordingly, I conclude that the ALJ did not err in discrediting plaintiff because of her contradictory statements regarding her drug and alcohol use. See Thomas, 278 F.3d at 959.

**C.    Gaps in Mental Health Treatment**

The ALJ also discredited plaintiff on the basis of large gaps in her treatment for her mental illness, plaintiff's alleged primary barrier to working on a full-time basis. In this case, plaintiff alleges disabling mental impairments beginning December 31, 2001. However, as the ALJ correctly noted, the record reflects minimal, if any, mental health treatment until 2004.

As the ALJ discussed, plaintiff received sporadic treatment at Cascadia Behavioral Healthcare between January and July of 2004. Plaintiff was referred to Cascadia by DHS as part of her parenting plan. Tr. 322. On January 28, 2004, plaintiff reported ongoing depression, anxiety, difficulty sleeping, appetite fluctuation, and decreased motivation. Plaintiff's diagnostic impression was major depressive disorder, and she was given medication samples and reportedly was referred to a therapist. Tr. 323. As the ALJ correctly noted, plaintiff visited Cascadia in March, May and July of 2004, largely for medication management. At that time, plaintiff indicated that the medication was helping, as her crying spells had decreased, and she was sleeping better. Tr. 317-19.

As the ALJ correctly observed, plaintiff did not seek mental health treatment again until some two years later, in April of 2006. At that time, plaintiff was referred by Planned Parenthood to Cascadia. The records indicate that plaintiff had not received treatment since 2004, and that the week prior, plaintiff was suspected of having bipolar disorder. Tr. 309, 315. A Cascadia physician noted that plaintiff's primary diagnosis was unclear, and offered a differential diagnosis of personality disorder, dysthemia, current methamphetamine abuse, and major depressive disorder. Tr. 316. Plaintiff was given follow up resources for low-cost counseling and indigent care facilities. Tr. 309.

On April 28, 2006, plaintiff transferred her care to Lee Walters, M.D.  Dr. Walters saw plaintiff a few times in April and May of 2006, and treated plaintiff for facial cellulitis.  Dr. Walters diagnosed bipolar disorder and prescribed Seroquel and Zoloft.  Tr. 324-31.  To be sure, the record reflects that plaintiff did not receive consistent, ongoing treatment for her bipolar disorder and anxiety until 2008.

In June of 2008, plaintiff began seeing Janet Stein, F.N.P., and Sally Rothacker-Peyton, P.M.H.N.P.  When discussing plaintiff's treating nurse practitioners, the ALJ noted several instances where plaintiff was not compliant with her medications. The ALJ noted that Nurses Stein and Rothacker-Peyton opined that plaintiff would have difficulty keeping up with the pace of a normal workweek.  However, the ALJ discussed that the nurses also found that plaintiff's symptoms would improve if plaintiff regularly took her medications.  Ultimately, the ALJ discounted the opinions of nurses Stein and Rothacker-Peyton because they were based on plaintiff's subjective self-reports and because both reported that plaintiff would improve if plaintiff complied with treatment.  Notably, plaintiff does not specifically challenge the ALJ's assessment of this medical evidence.[1]

---

[1]Instead, plaintiff summarizes the medical evidence from eight separate medical providers, contending that the medical evidence demonstrates that plaintiff has moderate difficulties in maintaining concentration, persistence, and pace, and that the
(continued...)

An ALJ may properly rely upon a claimant's failure to seek or follow treatment when making an adverse credibility determination. Molina, 674 F.3d at 1113-14; Tommasetti, 533 F.3d at 1039; Smolen, 80 F.3d at 1284. An ALJ may discredit a claimant where "the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p.

Plaintiff contends that despite acknowledging that plaintiff suffers from bipolar disorder, the ALJ "failed to ask Plaintiff why there was a gap in her mental health treatment." Pl. Brief (#22) at 22. Plaintiff appears to argue that under SSR 96-7p, ALJs are required to ask claimants whether they have good reasons for failing to seek treatment, such as lacking insurance, an inability to pay, or other "reasonable possibilities." Id. I disagree.

To be sure, it is plaintiff's burden to assert a good reason for failing to seek treatment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)(noting that a claimant's failure to assert a good reason for failing to seek or comply with treatment can adversely impact credibility). As the Ninth Circuit recently reiterated, "a

---

[1](...continued)
ALJ erred in finding her less credible because she is unable to comply with taking her medications. For the reasons discussed above, I conclude that the ALJ reasonably interpreted this evidence.

claimant's failure to assert a good reason for not seeking treatment, 'or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the claimant's pain testimony.'" <u>Molina</u>, 674 F.3d at 1114.

At the hearing, plaintiff did not offer an explanation for the gaps in her treatment between 2001 and 2004, 2004 and 2006, and 2006 and 2008. Plaintiff now asserts that her gaps in treatment and inability to consistently take her medication may be caused by her mental illness, relying on <u>Nguyen v. Chater</u>, 100 F.3d 1462 (9th Cir. 1996) and other similar cases. Plaintiff's reliance on <u>Nguyen</u> is misplaced.

<u>Nguyen</u> is distinguishable from the current case. In <u>Nguyen</u>, the court noted that people suffering from depression "often do not recognize that their condition reflects a potentially serious mental illness." <u>Nguyen</u>, 100 F.3d at 1465. Unlike <u>Nguyen</u>, the record in this case reveals that plaintiff was aware of her condition. Plaintiff sought and received treatment for depression in 2004. Plaintiff then reported to her providers that she felt better when taking her medication and she returned several times for medication refills.

I also reject plaintiff's contention that her gap in treatment from 2004 to 2006 is because she did not realize the seriousness of her symptoms until she received a bipolar diagnosis in 2006. Plaintiff's position is undermined by the fact that after receiving

the bipolar diagnosis, plaintiff again obtained only sporadic treatment, and missed appointments. Indeed, plaintiff appears to receive her most regular mental health treatment beginning in 2008, the same year she filed her social security applications. Furthermore, unlike Nguyen, plaintiff has failed to cite any medical evidence that her failure to consistently take her medication is attributable to her mental illness rather than her own preference. See Molina, 674 F.3d at 1114 (ALJ validly discounted plaintiff's credibility for failing to seek recommended treatment).

I also reject plaintiff's suggestion that her poverty constitutes a legitimate reason to forego treatment. The record in this case demonstrates that when plaintiff wanted to obtain medication for her depression, anxiety and bipolar disorder, she did so. Plaintiff regularly received medication samples, and was given information on low cost counseling and other resources. Therefore, I conclude that the ALJ's findings in this respect are a rational interpretation of the evidence. See Tr. 311-313, 318, 328; Carmickle, 533 F.3d at 1165.

I conclude that based on my review of the entire record, the ALJ could reasonably conclude that plaintiff's failure to obtain consistent mental health treatment indicated that her limitations were less serious than alleged. See Molina, 674 F.3d at 1113-14; Tommassetti, 533 F.3d at 1039; Burch, 400 F.3d at 681.

16 - OPINION AND ORDER

As the Commissioner concedes, the ALJ erred in discounting plaintiff's credibility on the basis that her medical records do not support her claims of hallucinations, night terrors, migraines, and sleep issues. This error, however, does not detract from the ALJ's other citation to inconsistencies in plaintiff's testimony, inconsistent reports of drug and alcohol use, and large gaps in her mental health treatment, which constitute substantial evidence. See Carmickle, 533 F.3d at 1163 (ALJ's error does not negate the validity of the ALJ's adverse credibility determination).

In summary, although the ALJ erred in discounting plaintiff's credibility with respect to her migraines and hallucinations, the ALJ provided several other legitimate bases, which are supported by substantial evidence, to discount plaintiff's subjective symptoms. I conclude that when these reasons are taken together, amount to clear and convincing reasons to discredit plaintiff.

## II. ALJ's RFC Findings Comply with SSR 96-8p

In her briefing to this court, plaintiff has failed to assign error to the ALJ's evaluation of the medical evidence from her physicians and treatment providers. As the Commissioner correctly indicated in its response brief, plaintiff failed to articulate a specific argument with respect to any physician's opinion in her opening briefing. Moreover, after the Commissioner highlighted this error, plaintiff failed to make any such argument in her reply. Accordingly, I decline to specifically address the ALJ's

assessment of any particular physician's opinion. <u>See</u> <u>Carmickle</u>,
533 F.3d at 1161 n.2 (declining to address issues not argued with
specificity in briefing). Nevertheless, I have reviewed the ALJ's
evaluation of the medical evidence and conclude that it is free of
legal error and is supported by substantial error in the record.
<u>See</u> <u>Tommasetti</u>, 533 F.3d at 1038.

Instead, plaintiff argues that the ALJ erred when evaluating
the RFC because the ALJ failed to discuss plaintiff's ability to
work on a regular and sustained basis as required by SSR 96-8p.

SSR 96-8p provides in relevant part:

> Ordinarily, RFC is the individual's maximum remaining
> ability to do sustained work activities in an ordinary
> work setting on a regular and continuing basis, and the
> RFC assessment must include a discussion of the
> individual's abilities on that basis. A "regular and
> continuing basis" means 8 hours a day, for 5 days a week,
> or an equivalent work schedule. ... RFC is assessed by
> adjudicators at each level of the administrative review
> process based on all of the relevant evidence in the case
> record, including information about the individual's
> symptoms and any "medical source statements" – i.e.,
> opinions about what the individual can still do despite
> his or her impairment(s) – submitted by an individual's
> treating source or other acceptable medical sources.

SSR 96-8p, at *2 (footnotes omitted). Plaintiff contends that the
ALJ erred by failing to provide a function-by-function analysis.
Plaintiff also argues that the RFC fails to include her reduced
concentration, stamina, pace, and irritability in the RFC. I
disagree.

An ALJ is not required to prepare a "function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by record." <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1217 (9th Cir. 2005). Here, the ALJ determined that plaintiff was capable of performing light work, except that plaintiff was limited to lifting 15 to 25 pounds frequently and occasionally; that she could stand and walk two hours in an eight hour day, and had no restriction on sitting; plaintiff could understand and carry out simple to semi-complex instructions and tasks; and was limited to occasional contact with co-workers and the general public. Thus, the ALJ addressed the extent of plaintiff's ability to work in the context of an eight hour work and concluded that plaintiff's RFC was the most she could do. Tr. 25.

In this case, the ALJ addressed the various psychological assessments, the PRTF, the MRFC, as well as plaintiff's physical capabilities. Concerning plaintiff's physical capabilities, the RFC incorporates the assessment of Dr. Robinson, which the ALJ credited, and plaintiff does not challenge. Plaintiff's alleged mental limitations were based on plaintiff's subjective complaints, which the ALJ properly discredited. Additionally, the ALJ noted that plaintiff's treating nurse practitioners opined that plaintiff's mental condition would improve if she was compliant with treatment, a finding plaintiff does not challenge. And, with

respect to plaintiff's irritability, the ALJ incorporated limitations with co-workers and the general public, crediting R.G. Cahal, M.D.    Thus, in making the RFC determination, the ALJ considered the limitations which were supported by the record and did not rely upon plaintiff's properly discredited subjective statements. Accordingly, preparing a function-by-function analysis was unnecessary. Bayliss, 427 F.3d at 1217.

Therefore, on the record before me, I conclude that the ALJ did not fail to comply with SSR 96-8p. McCollister v. Astrue, 2013 WL 124104, *5 (D. Or. Jan. 9, 2013).

III. **The ALJ's Hypothetical to the VE**

Plaintiff contends that the ALJ's hypothetical to the VE was incomplete because it did not contain all of plaintiff's work-related limitations, and thus is not supported by substantial evidence.[2]  The hypothetical posed to the VE contained all of the limitations which the ALJ deemed credible and supported by substantial evidence in the record, and therefore, the ALJ properly relied upon the VE's testimony given in response. Bayliss, 427 F.3d at 1217; Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001).

_____

[2]I note that plaintiff did not challenge the ALJ's Step Four findings that plaintiff is capable of performing her past relevant work as a cashier.

Lastly, plaintiff submits that the ALJ erred in relying on the VE's testimony because the VE's testimony lacked foundation.  At the hearing, in response to the ALJ's hypothetical, the VE identified two positions that such a claimant could perform:  (1) document preparer, Dictionary of Occupational Titles (DOT) number 249.587-018, with 39,000 jobs in Oregon and 2.9 million jobs nationally; and (2) small products assembly, DOT number 706.684-018, with 8,900 jobs in Oregon and 288,500 jobs nationally.  Tr. 74-75.  At the hearing, plaintiff's counsel's inquired how many document preparer jobs would be eliminated if the job were performed standing.  Tr. 77.  The VE responded that the DOT classifies that job as sedentary, and that the number of jobs represents the broad occupational category.  Tr. 77-78.  According to plaintiff, because the VE could not testify how many document preparer positions specifically are performed while seated, the VE's testimony lacked the proper foundation.

Plaintiff's argument is without merit.  Here, the VE testified that the document preparer position was consistent with the hypothetical posed by the ALJ, and that the position was classified by the DOT as sedentary.  The VE further testified that she had observed the job performed while seated, and that her testimony was consistent with the DOT.  Tr. 68-69, 77-78.  Because an ALJ may rely upon the VE's testimony about the number of jobs that exist in a particular occupational category, no further foundation was

required, and the ALJ properly relied upon the VE testimony.  <u>See</u>
<u>Bayliss</u>, 427 F.3d at 1218 ("A VE's recognized expertise provides
the necessary foundation for his or her testimony.  Thus, no
additional foundation is required."); <u>Zamora v. Astrue</u>, 853
F.Supp.2d 1048, 1057-58 (D. Or. 2011).

**<u>CONCLUSION</u>**

For the reasons stated above, the Commissioner's final
decision denying benefits to plaintiff is AFFIRMED.  This action is
DISMISSED.

IT IS SO ORDERED.

DATED this **27** day of FEBRUARY, 2013.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge

22 - OPINION AND ORDER